Sutlirr, J.
The demurrer denies the validity of the instrument sued upon, either as a statutory undertaking or as a common-law contract.
If the undertaking is unauthorized by statute,-and invalid by the rules of the common law applicable thereto, the demurrer was well taken to the petition; otherwise it was not, and should 'have been overruled.
The code of civil procedure, passed March 11, 1853, took effect July 1, 1853. It is provided by section 511, that “a judgment rendered or final order made by a probate court, justice of the peace, or any other tribunal, board, or officer, exercising judicial functions, and inferior in jurisdiction to the court of common pleas, may be reversed, vacated, or modified by the court of common pleas.”
*By section 530 itis provided that “writs of error and certiorari to reverse, vacate, or modify judgments or final orders, in civil cases, .are abolished, but courts shall have the same power to compel, -complete, and perfect transcripts of the proceedings containing the judgment or final order sought to be reversed, to be furnished, as they heretofore had under writs of error and certiorari.”
These provisions would seem to make the petition in error for •reversing the judgment of a justice of the peace substantially the ■same as the proceeding in certiorari under our former practice act.
But at the time of adopting the code of civil procedure, the .action of forcible entry and detainer was a special statutory remedy, provided by “an act to regulate the action of forcible entry and .detainer,” passed February 25, 1831, and subsequent amendments thereto. And it was provided by section 605 of the code, that “where, by statute, a civil action, legal or equitable, is given, and the mode ■of proceeding therein is prescribed, this code shall not affect the proceedings under such statute until the legislature shall otherwise ■provide, but the parties may, if they see fit, proceed under this act.”
It is provided by section 9 of the forcible entry and detainer act of 1831, that no appeal should be allowed from the judgment of the justices; but that the proceedings of said justices might be removed by certiorari into the court of common pleas of the county. And it is provided by that act, section 10, “ That the person applying for a *259 ■writ of certiorari shall, before the same is issued, give bond with sufficient security to the defendant in certiorari, to bo approved of by the clerk of the court issuing the same, in the penal sum of five hundred dollars, conditioned for the faithful prosecution of the. said suit: and in case of failure, that he will pay all costs, rents, and damages which maybe assessed to the defendant in certiorari, as hereinafter ^provided, which bond shall be lodged with said ■clerk for the use of the defendant.” Chase’s Statutes, 1767.
This statutory provision for removing the proceedings of the justices after judgment into the court of common pleas for review, was therefore left in force, apparently, upon the adoption of the code of civil procedure, on the 11th of March, 1853, and was not thereby contemplated to be repealed on the 1st of July, 1853, when the code was to take effect, which would, but for the saving in .■section 605 of the code, have been then repealed.
The reason of the saving contained in section 605 is doubtless to be thus explained: The code of civil procedure was prepared by commissioners appointed under the act of March 4,1852 (Curwen’s ■Stat. 1746), and reported to the legislature in January, 1853, substantially as adopted, and without any respect to “ an act of the jurisdiction and procedure before justices of the peace, and of the •duties of constables in civil cases,” passed March 14, 1853. Cur-wen’s Stat. 2052. The code commissioners appointed under the act of March 4,1852, in writing section 605, doubtless contemplated the continuance in force of the act of 1831, of forcibly entry and ■detainer, containing the provisions embraced in sections 9 and 10 of that act, already referred to; and the legislature of 1853, to whom it was reported, i-n revising and adopting it, although at the time ■of its- adoption, March 11th, the justices’ act was then before them .and about to be adopted, neglected so to amend the code of civil procedure as to make it strictly consonant with the repeal of the act of 1831, and the provisions of the justices’ act then before the legislature and about to be enacted, in the place of the act of 1831. If upon the adoption of the code of civil procedure, the legislature had not also adopted the “ act of the jurisdiction and procedure before justices of the peace.” etc., the intention of the code commissioners would have been realized by the act of 1831, relating to proceedings in forcible entry and detainer, being left in full force. But three days after the ^adoption of the code of civil procedure, the same legislature also adopted the “act of the jurisdic *260 tion and procedure before justices of the peace,” etc., which had been reported by the judiciary committee at that session of the. legislature, and previous to their adojrtion of the code.
Article 10 of that act provides for proceedings in the action of forcible entry and detainer, and was evidently designed to supersede the act of 1831, and its amendments upon that subject. It is provided by that act, in section 132: “No continuance shall be granted for a longer period than eight days, unless the defendant applying therefor shall give an undertaking to the adverse party with good and sufficient surety, to be approved by the justice, conditioned for the payment of. the rent that may accrue, if judgment be rendered against the defendant.”
It is also provided that, after final judgment by the justice of the-peace (section 138), “ The officer shall within ten days after receiving the writ, execute the same by restoring the plaintiff to the possession of the premises, and shall levy and collect the costs and make return as upon other executions. If the officer shall receive a notice from the justice that the proceedings have been stayed by-an allowance of a writ of error, he shall immediately delay all. further proceedings upon the execution; and if the premises have been restored to the plaintiff, he shall immediately place the defendant in the possession thereof, and return the writ with his proceedings and costs taxed thereon.”
These two sections of the justices’ act show that it was contemplated that the proceeding should be a summary one, and that any delay, even by a continuance longer than eight days on the part of the defendant, should be only upon an undertaking and security to-pay the rents to the adverse party, if finally convicted of a wrongful detainer; and also that the judgment of the justice was to be subject to review by writ of error or otherwise, as it had been-under the act of 1831. But in this act no express provision seems *to have been made for the removal of the case to the court of common pleas after final judgment by the justice. And, by section 222, article 15 of the same act, it is provided that “the act entitled 1 an act to regulate the action of forcible entry and detainer,’ passed February 25,1831, and the acts amendatory thereof, etc., ... bo and the same are hereby repealed.” And it is provided as follows, in the next and concluding section, 223: “ This-act shall take effect and be in force from and after the first day of July, one thousand eight hundred and fifty-three.”
*261 But' it is also provided under the general provisions of article 14 of this justices’ act, as follows, section 202 : “ The provisions of the act entitled ‘an act to establish a code of civil procedure,’ passed March 11, 1853, which are in their nature applicable to the jurisdiction and proceedings before justices, and in respect to which no special provision is made by statute; are applicable to the proceedings before justices of the peace.”
The case before us is evidently one “in respect to which no .special provision is made by statute,” authorizing the court of common pleas to either stay the execution of the justice, or upon staying the same to order an undertaking to be entered into, such as was evidently contemplated by the provisions of article 10 of the justices’ act referred to.
The question then arises: Are there any “ provisions of the code of civil procedure which are in their nature applicable ” to these proceedings before justices? If so, such provision might properly be had respect to by the court of common pleas in this case.
It is provided by section 519 of the code, that “ no proceeding to reverse, vacate, or modify any judgment or final order rendered in the probate court,” etc., . . . “ shall operate to stay execution, unless the clerk of the court in which the record of such judgment or final order shall be, shall take a written undertaking, to be ex•ecuted on the part of the plaintiff in error to the adverse party, with one or more sufficient sureties, as follows.” . . . “When it ■^directs the sale or delivery of possession of real property, the undertaking shall be in such sum as may be prescribed by any court of record of this state, or any judge thereof, to the effect that during the possession of such property by the plaintiff in error, he will not commit nor suffer to be committed any waste thereon, and if the judgment be affirmed he will pay the value of the use and occupation of the property from the date of the undertaking until the delivery of possession, pursuant to the judgment, and all costs.”
The parties to this undertaking, in making the same, evidently had respect to this provision of the code as one they, at the time, regarded in its “ nature apjfficable to the proceedings” of the justice which they were desirous of having revised and reversed by the court of common pleas, and upon which they wished, in the meantime, to have a stay of execution.
The undertaking as made was accepted, and the proceedings of *262 the justice were thereupon brought into the court of common plea» for review, and the execution upon the justice’s judgment stayed, and upon final hearing the judgment of the justice was affirmed;, and it is now insisted by the makers of the undertaking that the same was utterly defective and void.
The provisions of section 202 of the justices’ act, in relation to “proceedings before justices,” in respect to which no special provisions by statute have been made, by a strict interpretation, might doubtless be regarded as relating rather to present and future than to past proceedings, to judgments already rendered and to be removed into another court, as in the present ease; yet both in the justices’ act and in the code, the word “proceedings” is occasionally used in this larger sense. And we think a liberal interpretation, which seems due to this section in relation to the several provisions referred to, authorized a reference to section 519, as one in its nature applicable to the making of this undertaking, though not strictly so in its terms.
*It is true the proceeding in forcible entry and detainer is-not, strictly speaking, a civil action, being neither an action at law nor a suit in equity, but it was- doubtless intended to be embraced by the provision in section 605 of the code, as a civil action given by statute. And the judgment and proceedings in forcible entry and detainer are clearly within sections 511 and 524 of the code. The judgment was then equally subject to review and reversal by the court of common pleas, as if it had been an action at law. The-party, therefore, by the express provisions of the code, had the-right to bring the proceedings of the justice before the court of' common pleas by a' petition in error. And it is provided, in relation to bail and stay of execution upon all judgments of justices of' the peace, mentioned in section 511, as follows:
“Seo. 524. No proceeding to reverse, vacate, or modify any judgment rendered, or final order made by a justice of the peace, shall operate as a stay of execution, unless the clerk of the court of common pleas shall take a written undertaking to the defendant, executed on the part of the plaintiff in error by one or more sufficient, sureties, to the effect that the plaintiff will pay all the costs which have accrued, or may accrue, on such proceedings in error, together with the amount of any judgment that may be rendered against such plaintiff in error, either on the further trial of the case, after the judgment of the court below shall have been set *263 aside, or reversed, or upon and after the affirmance thereof in the court of common pleas.”
Now, it is evident that the undertaking in this case being not only to pay the value of the use and occupation, etc., but also to pay the damages and costs expressed by the judgment of the justice, and also the costs in the court of common pleas, even if the undertaking respecting waste, use, and occupation were rejected, there is still a substantial compliance with the requisition of the foregoing provisions in relation to undertakings to stay-execution upon * “judgment rendered by a justice of the peace.” The undertaking, therefore, was, in any view, when received and accepted by the clerk, sufficient to cause the proceedings in error before the common pleas to operate as a stay of execution upon the judgment of the justice. And the petition not only counts upon the value of the use and occupation, but also contains an averment that the costs stipulated to be paid amount to fifty dollars and upward, and a judgment is asked, as well for the costs as for the rent. The demurrer could not, therefore, in that regard be properly sustained to the petition.
But we think, in the view of the case already expressed, that the undertaking is, in its general form and provisions, a reasonable and proper undertaking in the case, and ought to be regarded valid, as well to secure the payment of the value of the use and occupation,, as the payment of the damages and costs, as expressed by the terms thereof.
The judgment of the district court against the plaintiff on sustaining said demurrer, must therefore be reversed, and the cause will be remanded for further proceedings.
Brinkerhoee, C. J., and Scott, Peck, and G-holson, JJ., concurred.